UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| HILARY BOWMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:24-cv-00067-REW-HAI |
| v. ) | |
| ) | |
| DF ENTERPRISES, LLC, *doing business* ) | OPINION & ORDER |
| *as*, Brooklyn Brothers Pizzeria & Italian ) | |
| Restaurant, ) | |
| ) | |
| Defendant. | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Hilary Bowman, a food supply delivery driver, slipped and fell while unloading goods at Brooklyn Brothers Pizzeria in Corbin, Kentucky. He received workers' compensation benefits through an insurance policy maintained by his employer, Sofo Foods of Kentucky. But he also filed this action against Brooklyn Brothers, asserting negligence in premises upkeep and claiming damages for medical expenses and pain and suffering, among other things, arising from the fall. After removing the case to this Court on diversity, Brooklyn Brothers moved for summary judgment, arguing that the Kentucky Workers' Compensation Act (KWCA), KRS Chapter 342, entitled it to "up-the-ladder" immunity as a contractor of Sofo Foods. *See* DE 11. Bowman responded in opposition, arguing prematurity and that Brooklyn Brothers is not a "contractor" within the meaning of the statute, *see* DE 12, and Brooklyn Brothers replied, *see* DE 14. Brooklyn Brothers, without any genuinely disputed question, triggers the KWCA's up-the-ladder immunity provision, so the Court **GRANTS** summary judgment in its favor.

1

I.      Background

In March 2023, Plaintiff Hilary Bowman drove and delivered food supplies for Sofo Foods, a food service distributor in eastern Kentucky. He approached Brooklyn Brothers Pizzeria, a Sofo customer, in Corbin, Kentucky for a routine delivery of food supplies. *See* DE 1-2 at 3. Bowman had delivered to Brooklyn Brothers around once a week for the past several years. *See* DE 11-4 at 5. Indeed, at the time, Brooklyn Brothers and Sofo had been under contract for recurrent food deliveries for nearly seven years. *See* DE 11-3 at 3. Sofo was to deliver food to Brooklyn Brothers's back door between 9:00 a.m. to 11:30 a.m. and/or 1:00 p.m. to 5:00 p.m., with an expected delivery rate of 7 days. *See id.* at 2.[1]

As was customary, Bowman unloaded the food supplies onto a dolly and placed them inside Brooklyn Brothers's walk-in cooler. *See* DE 1-2 at 3. But on this fateful trip, a raised metal threshold at the cooler's entrance caught Bowman's foot, causing him to fall. *See id.*; DE 11-4 at 4.

Bowman allegedly sustained injuries from the fall to his back, left hip, and backside. *See id.* at 6. He sought and obtained workers' compensation for his injuries directly from Sofo Foods. *See* DE 12 at 1. He then filed this suit against Brooklyn Brothers, claiming pain and suffering, lost wages, and the loss of his ability to "lead and enjoy a normal life" due to Brooklyn Brothers's alleged negligence in failing to reasonably maintain its property for Bowman as a business invitee. *See* DE 1-1 at 3.

Brooklyn Brothers timely removed to this Court based on diversity jurisdiction. *See* DE 1. The Court scheduled discovery to begin with initial Rule 26 disclosures on July 15, 2024. *See* DE 2. Fact discovery remains ongoing, set to conclude on September 28, 2025, after the Court granted

---

[1] Plaintiff has not questioned the authenticity of the contract, insurance, and other documents cited by Defendant.

two extensions to the scheduling order. *See* DE 18 at 2; DE 20 at 1. In the interim, Brooklyn Brothers filed this motion for summary judgment, solely asserting immunity under the KWCA. *See* DE 11. Bowman responded, *see* DE 12, and Brooklyn Brothers replied, *see* DE 14. The matter is ripe for review.

## II.    Standard

### a.  Summary Judgment

Summary judgment is appropriate, under Rule 56, if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *See id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual

3

disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission—but not necessarily admissible—into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444–45 (6th Cir. 2006).[2]

### b. Kentucky Workers' Compensation Act

The Kentucky Workers' Compensation Act "governs most workplace injuries in the Commonwealth." *Hill v. Phoenix Paper Wickliffe LLC*, No. 5:22-CV-171-BJB, 2024 WL 4312240, at *1 (W.D. Ky. Sept. 26, 2024). Under the statutory scheme, laid out in KRS 342, Kentucky employers must maintain workers' compensation insurance to cover damages of employees injured while on the job, regardless of fault. *See id.* (citing *Phil Hollenbach Co. v. Hollenbach*, 204 S.W. 152, 156 (Ky. 1918)). And so long as an employer secures the necessary coverage, "the liability of such employers under this chapter shall be exclusive and in place of all other liability of such employer to the employee . . . ." KRS 342.690(1). In other words, "[t]he legislative scheme pairs no-fault coverage with remedial exclusivity." *Hill*, 2024 WL 4312240, at *1. Unless the worker "expressly opted out" of the workers' compensation system, "the injured worker is not entitled to tort damages from the employer or its employees for work-related injuries." *Sheets v. Ford Motor Co.*, 626 S.W.3d 594, 597 (Ky. 2021). This immunity "plays a pivotal role in maintaining the tradeoffs contained in Kentucky's workers' compensation

---

[2] Regrettably, Plaintiff briefs this as a case to be decided under Kentucky substantive and procedural law. Thus, Bowman quotes and cites at length to state cases applying Kentucky's legendary *Steelvest* standard. But, even in a diversity case, federal summary judgment standards control in this Court. *See Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 n.4 (6th Cir. 2013); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). The Court disregards the inapt part of Plaintiff's analysis.

scheme[,]" and "lie[s] at the heart of the trade-off built into any workers' compensation system[.]" *Black v. Dixie Consumer Prods. LLC*, 835 F.3d 579, 583–86 (6th Cir. 2016).

Importantly, the scheme established between an employer and employee extends to the relationship between a contractor and employees of a subcontractor. By separate provision, "[a] contractor who subcontracts all or any part of a contract and his or her carrier shall be liable for the payment of compensation to the employees of the subcontractor . . . ." KRS 342.610(2). The statute broadly defines a contractor to include, as relevant here, a person who contracts with another to "have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." KRS 342.610(2)(b). And just as the provision of benefits extends up the contractual chain, so does immunity from suit. *See* KRS 342.690(1) ("For purposes of this section, the term 'employer' shall include a 'contractor' covered by subsection (2) of KRS 342.610)[.]"). Dubbed "up-the-ladder" immunity, "when one firm . . . engages another firm . . . to perform a job or service that 'is a regular or recurrent part' of the contractor's work, the subcontractor's remedial exclusivity extends 'up the ladder' to shield the contractor from tort liability as well." *Hill*, 2024 WL 4312240, at *2 (citing *Reichwein v. Jackson Purchase Energy Co.*, 397 S.W.3d 413, 417 (Ky. Ct. App. 2012)). "Regular or recurrent," defined with similar breadth, includes, relative to the contractor's trade or business, anything "occurring again or repeatedly" or being "customary or normal, or happening at fixed intervals." *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 586 (Ky. 2007) (citing *Daniels v. Louisville Gas & Electric Co.*, 933 S.W.2d 821, 824 (Ky. App. 1996)). Thus, up-the-ladder immunity extends to all "customary, usual, or normal" contract work within the contractor's "trade, business, occupation, or profession[.]" *Cain*, 236 S.W.3d at 586–87.

Immunity shields the contractor regardless of whether the contractor normally performed the particular job with its own employees, so long as the job is one that is usually a regular or recurrent part of the contractor's trade or occupation. *See Sharp v. Ford Motor Co.*, 66 F. Supp. 2d 867, 869 (W.D. Ky. 1998). So, the fact that a defendant may not have ordinarily performed the contracted work itself is a "distinction . . . of no significance" under the KWCA. *Id.* (citing *Granus v. North American Philips Lighting Corp.*, 821 F.2d 1253, 1257 (6th Cir. 1987)).

A contractor seeking up-the-ladder immunity from tort liability to an employee of a subcontractor must show both that the contractor carried a workers' compensation policy in compliance with the KWCA and that the contractor hired (*i.e.,* contracted with) the subcontractor to perform a "regular or recurrent" aspect of the contractor's business. *See Hill*, 2024 WL 4312240, at *2.

### III. Analysis

#### a. Discovery Sufficiency

Before the merits, Bowman argues that the Court should defer its summary judgment ruling because the parties have not concluded discovery. *See* DE 12 at 4–6. First, and as Brooklyn Brothers properly points out, the litany of Kentucky cases Bowman relies on is not applicable in federal court, as the Rule 56 standard, and cases applying it, govern here. *See Tompkins*, 726 F.3d at 837 n.4 ("[A] federal court sitting in diversity uses the federal standard for summary judgment[.]"). Simply, Bowman has not properly challenged the sufficiency of discovery under Rule 56(d), and he has otherwise had ample time to explore discovery, especially in light of the purely legal issue, hinging on uncontested facts, Brooklyn Brothers presents.

Nothing requires a party to delay filing a summary judgment—and by extension, a court to rule on the motion—until fact discovery is entirely complete. The rules say as much. A party may

file its summary judgment motion "at any time until 30 days after the close of all discovery." FED. R. CIV. P. 56(b). Its axiomatic that the motion need not be delayed until after discovery, given that the applicable rule clearly contemplates that a party may file such a motion "at any time."

And, tellingly, there are mechanisms embedded in the federal rules allowing a party to challenge a premature summary judgment motion. Under Rule 56(d) (formerly Rule 56(f)), a party may submit an affidavit stating that the party cannot, for reasons stated in the affidavit, present facts essential to justify the party's opposition. *See* FED. R. CIV. P. 56(d). Absent such an affidavit, a district court is normally entitled to rule on a ripe summary judgment motion. *See Plott v. Gen. Motors Corp., Packard Elec. Div.*, 71 F.3d 1190, 1196 (6th Cir. 1995); *see also Johnson v. Royal Chem. Co., Ltd.*, No. 17-3234, 2017 WL 5461708, at *2 (6th Cir. Oct. 27, 2017) (holding that because the plaintiff "failed to satisfy the requirements of Rule 56(d) or otherwise move for additional discovery, the district court did not abuse its discretion by ruling on the motion for summary judgment without allowing further discovery"). And if no affidavit is filed, the Sixth Circuit will ordinarily refuse to entertain arguments that discovery was inadequate. *See Plott*, 71 F.3d at 1196 ("[I]f the appellant has not filed either a Rule 56([d]) affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery[.]") (citing *Klepper v. First Am. Bank,* 916 F.2d 337, 343 (6th Cir. 1990)).

Here, Bowman, who ignores the federal scheme, has not filed a Rule 56(d) affidavit challenging the sufficiency of discovery. Indeed, he has not argued that he lacks facts necessary to defend against summary judgment, nor specified what particular missing facts make the record insufficient to justify the Court ruling on the motion. The Court has not been given the opportunity to rule on the necessity for further discovery, and the failure to invoke Rule 56(d), as the "proper

7

and exclusive method" for raising discovery related opposition to a summary judgment ruling, forecloses Bowman's argument. *See Block v. Meharry Med. Coll.*, 723 F. App'x 273, 284 (6th Cir. 2018).

Fact discovery has been ongoing for nearly a year. *See* DE 7. Bowman indicates that the parties have exchanged all written discovery, but that depositions remain pending. *See* DE 12 at 5. Bowman asserts that deposition discovery would "likely provide evidence which is directly relevant to respond to Defendant's Motion." DE 12 at 5. But he fails entirely to explain what evidence that might be. Moreover, he has not asserted that the absence of deposition discovery has meaningfully prevented him from defending the summary judgment motion. Rather, he develops a full and complete argument challenging Brooklyn Brothers's position that it was a "contractor" of Sofo Foods under the KWCA. That issue—the sole basis for Brooklyn Brothers's summary judgment motion—is, here at least, purely legal, and the discovery completed to date paints the necessary factual picture to adjudicate the underlying law. Bowman does not list essential evidence the timing of the motion precludes him from accessing. *See Cabrera v. JBS USA, LLC*, 568 S.W.3d 865, 870 (Ky. Ct. App. 2019) ("[N]o further discovery was needed to determine whether this type of work was 'regular' or 'recurrent[.]'"); *Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Supplemental Ret. & Disability Fund*, 566 F.3d 597, 617 (6th Cir. 2009) ("A district court generally does not abuse its discretion in denying a Rule 56([d]) discovery request if granting the desired discovery would not have affected its ruling."). Accordingly, a summary judgment ruling on the current record is appropriate.

### b. Up-the-Ladder Immunity

Turning to the merits, Brooklyn Brothers contends that is it entitled to up-the-ladder immunity as a contractor of Sofo Foods. *See* DE 11-1 at 9–10. Bowman counters that Brooklyn

8

Brothers cannot be a contractor of Sofo Foods because the contractual relationship between the companies only called for the provision of goods, not services. *See* DE 12 at 7–12. Brooklyn Brothers has the better argument.

As described, a defendant asserting up-the-ladder immunity must show two things: (1) that it maintained a workers' compensation policy in compliance with the KWCA, and (2) that the contractor hired the subcontractor to perform a "regular or recurrent" aspect of the contractors' business. *See Hill*, 2024 WL 4312240, at *2.[3]

Start with the easy part: Brooklyn Brothers maintained a workers' compensation insurance policy at the time of the fall, as required by the KWCA. *See* DE 11-5 at 2. Bowman does not dispute the policy's veracity or claim that the policy is legally deficient in any way. Rather, he skips ahead to challenge whether Brooklyn Brothers is a contractor entitled to immunity. Facing no argument to the contrary, the Court is satisfied that Brooklyn Brothers fulfills the first prong of up-the-ladder immunity. *See Hill*, 2024 WL 4312240, at *2 (finding satisfaction of first up-the-ladder prong based on affidavit from contractor confirming that it maintained a proper workers' compensation policy and facing no dispute of the statement's accuracy or claim that the policy was deficient).

Next, and more crucially, the question distills to whether Brooklyn Brothers was a contractor—and thus, Sofo Foods a subcontractor—as required to invoke up-the-ladder immunity. That question is answered in two parts. First, courts ask whether the purported subcontractor performed work that was a "customary, usual, or normal" part of the contractor's business. *See*

---

[3] Some cases seem to incorporate a third element into the analysis—whether the purported contractor contracted with the subcontractor. *See, e.g.*, *Cabrera*, 568 S.W.3d at 869. Here, there is no dispute that Brooklyn Brothers and Sofo Foods were under contract for food supply and delivery at the time of Bowman's fall. *See* DE 11-1 at 8; DE 12 at 7. Logically, the "contracted" part often collapses into analysis of what the hiring entailed.

9

*Black*, 835 F.3d at 585. And second, courts look to whether the employee was injured while performing work that the contractor would normally be expected to perform with its own employees. *See id.* Brooklyn Brothers is a pizza and Italian restaurant. Food delivery is a customary part of Brooklyn Brothers's business, and without Sofo, Brooklyn Brothers would normally perform food sourcing and delivery with its own employees. *See* DE 11-7 at ¶¶ 5–8 (affidavit from Brooklyn Brothers's owner attesting to these facts). Answering both questions affirmatively, the Court finds that Brooklyn Brothers was a contractor of Sofo Foods, and thus, entitled to up-the-ladder immunity. Indeed, Sofo employees delivered food inventory to Brooklyn Brothers, inventory crucial to restaurant operation. The deliveries, per the parties' agreement, involved Sofo employees unloading and bringing the foodstuffs into the restaurant at designated locations, including the walk-in cooler. That is where Plaintiff fell, precipitating this case. *See* DE 11-2 at 11 (Plaintiff's interrogatory responses, describing fall while "pulling a dolly when he tripped over a raised metal threshold . . . when exiting the walk-in cooler at Brooklyn Bros Pizzeria").

Kentucky state courts—and federal courts applying Kentucky law—readily apply up-the-ladder immunity to businesses contracting for the purchase and delivery of goods for business operations. *See Hill*, 2024 WL 4312240, at *2 (paper mill deemed contractor of lumber delivery driver, and thus immune from damages for driver's trip and fall in mill parking lot because lumber delivery was regular and recurrent part of the paper mill's business); *Houser v. Kohl's Inc.*, No. 5:22-CV-108-BJB, 2023 WL 1072008, at *3 (W.D. Ky. Jan. 27, 2023), *aff'd*, No. 23-5154, 2023 WL 9792372 (6th Cir. Sept. 12, 2023) (Kohls immune from suit by UPS driver who fell on store delivery dock while delivering store merchandise); *Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d 715, 718 (W.D. Ky. 2000) (Tractor Supply Co. immune from negligence suit as contractor of

10

delivery driver who fell on store premises while delivering retail products); *Sharp*, 66 F. Supp. 2d at 869–70 (W.D. Ky. 1998), *aff'd*, 194 F.3d 1314 (6th Cir. 1999) (Ford deemed contractor of company contracted to load and unload manufactured vehicles from adjacent railway and thus immune from liability for subcontractor's employee injured on the job); *Wright v. Dolgencorp, Inc.*, 161 S.W.3d 341, 344 (Ky. Ct. App. 2004) (Dollar General deemed immune as an up-the-ladder contractor against claim for damages from delivery driver of company contracting with Dollar General for distribution and delivery drivers); *Tom Ballard Co. v. Blevins*, 614 S.W.2d 247, 249 (Ky. Ct. App. 1980) (hauling and delivery of coal deemed regular and recurrent part of coal mining company's business). Indeed, as the Sixth Circuit decisively put it, courts have "consistently and uniformly held that the delivery of parts or goods from one company site to another is a regular and recurrent part of a company's business." *Giles v. Ford Motor Co.*, 126 F. App'x 293, 295 (6th Cir. 2005).

Little daylight separates these cases and the present one. Brooklyn Brothers contracted with Sofo Foods for the purchase and delivery of food inventory and supplies—an essential aspect of the restaurant's operations. As Brooklyn Brothers's owner attested, if Sofo Foods stopped delivering inventory to the pizzeria, "operations would cease, pending logistical modifications such as directly sourcing the products from local grocery stores," which other Brooklyn Brothers employees would have to perform. *See* DE 11-7 at 3. Logically, inventory delivery to a restaurant is the lifeblood of the business itself. Just as "the mining business would become extinct if the mining companies could not get their product to market," *Tom Ballard Co.*, 614 S.W.2d at 249, so too would Brooklyn Brothers become extinct if they could not craft the food necessary to fulfill its role as a restaurant. *See also Smothers*, 104 F. Supp. 2d at 718 (Transporting merchandise to retail stores was a "regular element of Tractor Supply's retail operation" and was an "essential

11

element of operating" a nationwide retail chain). A pizzeria requires ingredients to make pizza, just the same as a car manufacturer requires parts to build its cars and a retail store requires goods to sell. There is no appreciable difference between what's being sold; the thread is that the business requires inputs to create the outputs it sells. And absent Sofo Foods or a similar contractor, Brooklyn Brothers "would normally perform or be expected to perform" that role. *See Black*, 835 F.3d at 585.

Sofo's deliveries were plainly a customary and usual part of Brooklyn Brothers's operations, too. Under the contract, Sofo was to make deliveries of food products to Brooklyn Brothers at regular intervals, anticipated by the contract to be around once a week. *See* DE 11-3 at 2. And Bowman's interrogatories confirm that this expectation bore out; he reportedly delivered to Brooklyn Brothers once a week for several years. *See* DE 11-4 at 5. As interpreted by Kentucky Courts, "recurrent" simply means "occurring again or repeatedly," while regular means "customary or normal, or happening at fixed intervals." *Cabrera*, 568 S.W.3d at 870. The relationship between Brooklyn Brothers and Sofo, consisting of repeated deliveries at fixed intervals over several years, easily checks these boxes. Thus, "the work performed by [Bowman] became a part of [Brooklyn Brothers's] business by contract[.]" *Gen. Elec. Co. v. Cain*, 236 S.W.3d 579, 586 (Ky. 2007).

Bowman argues, really in its lone merits salvo, that *Davis v. Ford Motor Co.*, 244 F. Supp. 2d 784 (W.D. Ky. 2003), requires denial of Brooklyn Brothers's motion. *See* DE 12 at 8–11. *Davis* held that up-the-ladder immunity did not shield Ford from liability to an employee of a part manufacturing company, which manufactured metal crew cab roofs panels for use on Ford trucks. *See Davis*, 244 F.Supp.2d at 790–91. Ford contracted with The Budd Company to manufacture the panels, which were then placed on Ford-provided racks for delivery to Ford's plant. *See id.* at 786.

12

But Budd employees did not deliver the panels, as "Ford contract[ed] with various third party carriers to pick up the full racks from Budd" and deliver them to Ford. *See id.* Budd employees never left Budd's facilities. *See id.*

The plaintiff, a Budd employee, was injured while loading panels onto Ford's racks, and after he received workers' compensation directly from Budd, he sued Ford for negligence. Ford moved for summary judgment, asserting up-the-ladder immunity, but the court denied the motion. It reasoned that "one who supplies goods, even component parts, does not cross the line from a supplier to a subcontractor for the purposes of a standard workers' compensation scheme unless that person renders some type of additional services or assistance in relation to the goods supplied." *Id.* at 790. Moreover, "the parties never contemplated that Budd would provide any services to Ford apart from producing and preparing the crew cab roof panels for delivery to Ford," and thus, the defendant "was not involved in any activity integral to the operation of the Truck Plant, other than producing a component part at an entirely separate location." *Id.*

Bowman draws parallels between *Davis* and this case, arguing that Bowman was "merely a supplier of goods" who cannot be "considered a 'contractor' because there was no additional conduct or service." DE 12 at 11. That distinction does not hold up.

The factual differences between the two cases are obvious. First, and most importantly, Budd employees never left Budd's facilities to do their work for Ford. *See Davis*, 244 F. Supp. 2d at 786. Instead, they manufactured components that would eventually make their way to Ford's facilities by way of third-party contracted deliverers. That contrasts with Bowman's role, which, by contract, was to transport and deliver food supplies directly to Brooklyn Brothers. *See* DE 11-3; DE 1-2 at 4 (Bowman delivered to Brooklyn Brothers "as requested by his employer, Sofo Foods"); *id.* at 3 (admitting fall occurred, leaving walk-in cooler, during requested delivery, in the

13

"course and scope of his employment with Sofo Foods"). The contract goes so far as to specify where Bowman should unload and deliver the goods, specified as the "back door," when he arrived at the restaurant. *See* DE 11-2 at 11. Thus, Sofo did not merely make or provide a good that Brooklyn Brothers bought. Rather, through its employee, Sofo delivered to the pizzeria, unloaded the goods, and wheeled them into the establishment, including into Brooklyn Brothers's designated cooler. That is far beyond mere sale of a good.

Further distinguishing the cases, Ford contracted with other third-party deliverers to transport the finished panels to Ford. Once Budd employees loaded the panels onto Ford's racks, "Budd's role in the delivery process is basically complete." *Davis*, 244 F.Supp.2d 786. When Bowman loaded the food products onto his delivery truck, the job was only half done. He then had to drive to Brooklyn Brothers's restaurant, unload the food from the truck, and place it—per the agreement and as Bowman was doing when he fell—in Brooklyn Brothers's preferred location. These are all services embedded in the contractual agreement between Brooklyn Brothers and Sofo, which meaningfully separates this case from *Davis*. Even in *Davis*, the court was careful to distinguish a situation where the supplier did more than just make the goods at its own plant, for distinct delivery by another. The Sixth Circuit put it thus, in *Giles:* "The *Davis* court held that the sale of goods by Budd to Ford did not constitute a regular and recurrent part of Ford's trade or business, absent the provision of some additional service that Ford would otherwise have had to do itself, *such as inspecting, unloading, or handling the goods*." *Giles*, 126 F. App'x at 296 (emphasis added) (citing *Davis*, 224 F. Supp.2d at 790). At its farthest reach, the *Davis* reasoning thus would characterize Sofo here as a subcontractor because the contract assigned Bowman the recurrent duty of delivering goods, unloading goods, and placing goods inside the Brooklyn Brothers establishment. This is just the additional manipulation reserved by *Davis*.

14

This perspective is also entirely consistent with other Kentucky state and federal courts, which have held that a business is immune from damages claims from contracted delivery drivers. *See Houser*, 2023 WL 1072008, at *3; *Smothers v. Tractor Supply Co.*, 104 F. Supp. 2d at 718. Those courts routinely emphasized the delivery aspect of those contractual relationships in finding the defendant immune as a contractor. *See Houser*, 2023 WL 1072008, at *3 ("[Defendant], in contrast, hasn't pointed to any evidence in the record demonstrating that the transportation of merchandise is *not* a normal part of the retailer's business operations.") (emphasis in original); *Giles*, 126 F. App'x at 296 ("The delivery of component parts from one plant to another cannot be described as a tangential part of the truck manufacturing business."). And it's also consistent with the goods/service dichotomy outlined in *Davis*, to the extent that dichotomy exists within Kentucky law.

The Court finally would point to *Cunningham v. Kroger Ltd. P'ship I*, 651 S.W.3d 199, 202 (Ky. Ct. App. 2022). There, the Court considered whether a grocery store got up-the-ladder immunity when an employee of a company contracted to deliver milk to the store got injured during the delivery and stocking process, while on the store's premises. The Court extended immunity because the delivery provided stock to be sold as part of the inherent operation of a grocer:

> [T]he work being performed . . . was a regular and recurrent part of KLP I's business as a retail grocery store; deliveries were made on a recurrent basis in order to keep the grocery store stocked with milk and KLP I's own employees routinely engaged in receiving and unloading the deliveries made by Cunningham. On the basis of the evidence in the record, the delivery and unloading of dairy products was a regular and recurrent part of the business of the retail grocery store.

*See id.* at 205. Further:

> It is undisputed that [the store] received regular shipments of dairy products, . . . which KLP I was incapable of producing itself and which had to be received and unloaded in order to conduct its retail grocery business. The evidence was also

15

> undisputed that KLP I's own employees actually directed and assisted in the unloading of the deliveries. Penske's deliveries were an integral part of the business of running the grocery store and indisputably meet the standard of KRS 342.610(2)(b).

*See id.* at 205–06. The case is an analytical match to this dispute. Just as delivery, offloading, and internal placement of store inventory at a grocery qualifies, delivery, offloading, and internal placement of restaurant inventory at a pizzeria qualifies under § 342.610(2)(b). Brooklyn Brothers is entitled to immunity from tort in this suit brought by its subcontractor's employee.

## IV. Conclusion

The KWCA's compensation scheme worked in this case. Brooklyn Brothers and Sofo Foods upheld their end of the bargain by maintaining adequate workers' compensation insurance coverage. And when an accident occurred, Bowman received prompt benefits without having to show fault or make the trek to court. The KWCA prevents Bowman from having it both ways. Accordingly, the Court **GRANTS** DE 11, Brooklyn Brothers's motion for summary judgment. The Court will enter a separate judgment.

This the 15th day of May, 2025.

Signed By:
*Robert E. Wier* REW
United States District Judge